

Robert DeJean, Opelousas, La., for plaintiff.

James G. Dubuisson and Edward Dubuisson, Opelousas, La., for defendant.

DAWKINS, Chief Judge.

Plaintiff sues for personal injuries and damages to his automobile, alleged to have been caused by the fault and negligence of the defendant's insured, one Miller. The automobiles of the insured and of plaintiff collided at a street intersection in the town of Eunice, Louisiana. Plaintiff's car was travelling Easterly on that portion of Highway No. 190 in the town of Eunice, known as Laurel Street, which is paved and extensively travelled; while Miller's son was proceeding South on First Street, which, at that time, was gravelled. It is conceded that a stop light at the intersection was not working, but travellers on Laurel Street, or Highway 190, had the right of way, and, in addition, had preference over the Miller car in the matter of entering the intersection because plaintiff's approach was from the right.

A town ordinance required cross traffic on First Street to come to a stop. The Miller car did not stop, but merely slowed

## BERTRAND v. UNITED STATES FIDELITY & GUARANTY CO.

### Civ. No. 3016.

United States District Court
W. D. Louisiana, Opelousas Division.
Nov. 13, 1952.

down from a speed of twenty to twenty-five miles per hour. Its driver died before the trial and, of course, did not testify. There were two other youths sitting on the front seat with him, but the one in the middle did not see plaintiff's approaching car and was not aware of its presence until the collision. The third was sitting on the right, or outside, and saw the lights of plaintiff's car, according to his estimate, about half a block away but said nothing to young Miller, who drove on across after slowing down. It is not known whether the latter was aware of the approach of plaintiff's car as was Fruge on the extreme right, or whether, like the boy in the middle, he failed to see it until the impact. It remains that by the time the Miller car reached the South lane in the highway, some ten or fifteen feet after entering the intersection, it was hit about the middle, but had sufficient momentum that it continued on some seventy-five to one hundred feet at a slight angle and into a canal on the left side of First Street, some fifty to seventy-five feet beyond the South line of the highway. Fruge stated he thought that they had plenty of time to get across and would himself have continued on as did young Miller. The three youths were pleasure riding and had no particular destination in view, the radio was on and, no doubt, attracting their attention.

One block West of the intersection was Main Street, which runs parallel to First Street across Highway 190. According to plaintiff, the signals were working there and he had to stop on the red light. The hour was approximately 10:00 o'clock at night, and plaintiff, with his mother and another passenger, had started a journey to Baton Rouge, Louisiana, from his mother's home some two miles West of Eunice. He was aware that there was a stop light at the intersection where the collision occurred, and after starting up from Main Street picked up to a speed of twenty-five to thirty miles per hour in the intervening block. However, on approaching the intersection with First Street, his attention was directed mainly to ascertaining whether the signals were working, and he admits that

he merely glanced from side to side of the highway in keeping a lookout. He, too, did not see the other car until approximately the moment of impact. His automobile, a new one in use about thirty days, after hitting the Miller car, travelled beyond the East line of the intersection and came to a stop at the extreme South edge of the highway, headed West or in the direction from which it had come. In the turn, the left front door had swung open and plaintiff was thrown out of the car. Neither machine appears to have turned over and both came to rest in upright position, notwithstanding the Miller car was resting on the bottom of a canal some nine or ten feet deep.

It is evident that both cars had considerable momentum when it is noted that the Miller car continued some seventy-five to one hundred feet after being struck in approximately the middle, and that its front seat was pushed in some six inches to one foot towards the driver's side. The front end of plaintiff's car was driven in so that there was difficulty in removing his mother from the right side of the front seat, the frame was bent beyond repair, the radiator destroyed and some $900 was expended for repairs.

Plaintiff was supported in his statement that he was not driving more than thirty miles per hour by the testimony of an employee of a filling station situated about the middle of the block on the South side, who saw plaintiff's car when it passed. This witness is apparently without interest. The fact that this machine turned completely around supports the theory that its contact with the other automobile was such that the blow was either a glancing one which swung the rear end to the left, or the momentum of the Miller car pulled its front to the right in a manner to spin it around.

The very purpose of right of way roads and streets is to permit through traffic to travel at such speeds as are permitted under the normal conditions applicable in the locality involved. Operators on such thoroughfares, while required to keep a watch for those who approach from intersecting roads or streets, are not bound to

reduce speed below what is permissible until there is evidence or indication that some one else has or will fail to stop or concede him the superior right of way. This applies equally day or night, except that, as has been often said, the duty of both drivers to be vigilant increases with the danger.

According to young Fruge, plaintiff's car was seen in ample time to stop and permit it to pass, and the driver must be held to have seen it also. However, they took the chance of driving, without stopping as the ordinance required, on to an extensively travelled main highway at an intersection where they knew the stop light was not working. On the other hand, the plaintiff was not aware that the lights were off, and his attention was concentrated on ascertaining their condition, and he did not discover that Miller was moving on to the highway in the few seconds which intervened. Had Miller's car stopped as it was required to do, the accident would not have happened.

■■ The court is convinced that the driver of the Miller car was guilty of negligence, and the defendant has failed to prove by a fair preponderance, as was necessary, that plaintiff was also guilty of negligence which contributed to his injury and damage.

■ The evidence does not establish any permanent injuries, but that plaintiff received numerous bruises and contusions and lost some three months from his work as a painter. He has endeavored to prove a permanent impairment in the region of his hips which would interfere with his pursuing the trade of a painter. However, the doctors called by him as witnesses did not support that conclusion, although they stated he complained of some pain in his hips which interfered with his painting, but the doctors were unable to support that contention. The court is of the view, therefore, that the sum of $1,000 for his injuries, pain, suffering, loss of time, etc., would be ample and that he should also recover the sum of $913.65 for repairs to his automobile.